UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
KENNETH MILLER,

               Plaintiff,                ORDER
                                        25-CV-3370(JS)(JMW)

     -against-

TRANS UNION, LLC; EQUIFAX
INFORMATION SERVICES, LLC;
EXPERIAN INFORMATION SOLUTIONS,
INC.; JP MORGAN CHASE BANK, N.A.,

               Defendants.
--------------------------------------------------------X
APPEARANCES

For Plaintiff:    Rami Salim, Esq.
                  Stein Saks, PLLC
                  One University Plaza Drive, Suite 620
                  Hackensack, New Jersey 07601

For Defendant
JP Morgan Chase
Bank, N.A.:      Christopher B. Turcotte, Esq.
                  Turcotte Law, P.C.
                  641 Lexington Avenue, 15th Floor
                  New York, New York 10022

SEYBERT, District Judge:

Presently before the Court is a Motion for Judgment on the Pleadings filed by Defendant JP Morgan Chase Bank, N.A. ("JPMC"). (See Motion, ECF No. 45; Support Memo, ECF No. 45-3, Opp'n., ECF No. 46; Reply, ECF No. 47.) The Motion seeks judgment on allegations made under the Fair Credit Reporting Act ("FCRA") by Plaintiff Kenneth Miller ("Plaintiff"), a consumer. Plaintiff asserts JPMC furnished false and misleading information to credit

1

reporting agencies when it documented certain of his credit card payments as late.  (See generally Compl., ECF No. 1.) Since the information at issue was neither inaccurate nor misleading, the Court GRANTS JPMC's Motion in its entirety.

## BACKGROUND

The Court presumes the Parties' familiarity with the facts giving rise to the Action.  See Miller v. Trans Union, LLC, No. 25-CV-3370, 2026 WL 913153 (E.D.N.Y. Apr. 3, 2026) ("Miller I").  As set forth in Miller I:

> This case arises out of an apparently innocent mistake Plaintiff made while setting up automatic payments, or "autopay," on his three JPMorgan Chase ("JPMC") credit card accounts (collectively, the "JPMC Accounts"). (Compl. ¶[¶] 17-18.) To set up autopay, a user must enter his or her bank account number, such that JPMC can automatically withdraw funds to satisfy monthly balances. (Id. ¶ 18.) When Plaintiff set up autopay on an unknown date, he inadvertently entered an M&T Bank account number with a one-digit difference from his own. (Id. ¶ 19.) The account related to the erroneously-entered number actually belonged to an unknown and nonconsenting third party (the "Unknown Account"). (Id. at 20.) Beginning in March 2024, the payments posted to Plaintiff's JPMC Accounts were timely and automatically withdrawn from the Unknown Account. (Id. ¶ 22.) In October 2024, Plaintiff discovered the error, immediately contacted JPMC, and asked for the affected payments to be reversed and credited to the Unknown Account. (Id. ¶¶ 22-23.) During this

2

initial contact with JPMC, Plaintiff asked to promptly pay off the affected payments, but a JPMC representative told him it would not accept his payments "until the payments from the [Unknown Account] were reversed." (Id. ¶[¶] 23-34.) On November 22, 2024, the affected payments were reversed and the Unknown Account was credited. (Id. ¶ 25.) On November 23, 2024, Plaintiff paid his outstanding JPMC balance. (Id.)

Miller I, 2026 WL 913153, at *1.

As a result of Plaintiff's mistake, his JPMC accounts had late payment notations for the July, August, and September 2024 pay periods. (Compl. ¶¶ 17, 29.) This information was later furnished to Trans Union, LLC, Equifax Information Solutions, Inc., and Experian Information Solutions, Inc (the "Former CRA Defendants"), which reported his payments for July, August, and September 2024 as late. (Id. ¶¶ 27-29.)

On January 17, 2025, Plaintiff alleges he formally disputed the late-payment notations with the Former CRA Defendants. (Id. ¶¶ 33-35.) Plaintiff contends his JPMC accounts "should not have any late payments listed on Plaintiff's credit report, as JPMC received all payments in a timely manner," and further emphasizes he had no other late payment notations before or after this issue. (Id. ¶¶ 30-32.) Despite the dispute, the Former CRA Defendants continued to report the disputed payments as late. (Id. ¶ 34.)

3

On June 16, 2025, Plaintiff filed the Complaint, which alleges JPMC failed to conduct a reasonable investigation of his payments and continued to report the disputed late payments. (Id. ¶ 36.)  Plaintiff contends this conduct either willfully or negligently violate the requirements of the FCRA under 15 U.S.C. § 1681s-2, which requires furnishers of information to conduct a reinvestigation when consumers dispute the accuracy and completeness of the reported information.  (Id. ¶¶ 62-83.)

On May 22, 2026, JPMC served its Motion and Support Memo. (See generally Motion; Support Memo.) In its Support Memo, JPMC primarily relies upon Miller I's conclusion that the information reported was factually accurate because "Plaintiff undisputedly did not make the Recorded Payments when they were due."  (Support Memo at 4 (quoting Miller I, 2026 WL 913153, at *3).) JPMC also argues the reported information was not misleading because the Court previously found "[r]egardless of the circumstances surrounding the Recorded Payments, there is nothing misleading about the CRA Defendants documenting late payments as such."  (Id. (quoting Miller I, 2026 WL 913153, at *3) (internal citation omitted)).)

On June 18, 2026, Plaintiff served his Opposition. (See generally Opp'n.)  Plaintiff attempts to distinguish this case from Miller I by focusing on JPMC's "independent obligations as a

4

furnisher under [the FCRA]." (Id. at 1.) Plaintiff contends Chase failed to "conduct a reasonable investigation after receiving notice of Plaintiff's dispute and continuing to verify the disputed reporting despite possessing information unavailable to the CRAs." (Id.) Because Plaintiff contends "Chase knew that monthly payments had been credited to Plaintiff[']s accounts" and, thus, "possessed information unavailable to the CRA Defendants," Plaintiff argues the action against JPMC is distinguishable from Miller I. (Id. at 4.) On July 2, 2026, JPMC filed a Reply. (See generally Reply.)

DISCUSSION

I.  Applicable Law
   a. Rule 12(c)

As the Court explained in Pearsall v. Sposato:

Rule 12(c) provides "[a]fter the pleadings are closed – early enough not to delay trial – a party may move for judgement on the pleadings." FED. R. CIV. P. 12(c). "The standard for granting a Rule 12(c) motion for judgement on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021)(citing Lynch v. City of N.Y., 952 F.3d 67, 75 (2d Cir. 2020)).

When considering a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state

5

> "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. Similarly, a complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

No. 16-CV-6733, 2023 WL 5956336, at *3 (E.D.N.Y Sept. 13, 2023).

      b. The FCRA

Under 15 U.S.C. § 1681s-2(a) of the FCRA, a furnisher is prohibited from providing information it knows or has reasonable cause to believe is inaccurate. See Ostreicher v. Chase Bank USA, N.A., No. 19-CV-8175, 2020 WL 6809059, at *3 (S.D.N.Y. Nov. 19, 2020). This subsection also prohibits furnishers from "reporting information that is, in fact, inaccurate if the consumer has notified the furnisher that the information is inaccurate." Id. Under 15 U.S.C. § 1681s-2(b) of the FCRA:

> [A]fter a consumer reporting agency has notified a furnisher [ . . . ] as to the accuracy of information, the furnisher must conduct an investigation and report the results to the [CRA]. Furthermore, if the information proves inaccurate or incomplete,

the furnisher must correct the information and report it to other [CRA's].

Matheson v. Ocwen Fed. Bank FSB, No. 05-CV-02747, 2008 WL 11413560, at *7 (E.D.N.Y. June 17, 2008).  However, an FCRA claim against a furnisher can move forward only with a threshold showing the reported information is inaccurate in the first place.  Id. at *8 ("A prerequisite to any successful claim is, obviously, the ability of [plaintiff] to offer proof that the information [defendant] reported was inaccurate.").

In determining whether reported information is inaccurate or misleading, Miller I stated:

> "A consumer harmed by a CRA's failure to follow such reasonable procedures may bring a civil action against the CRA." Sessa v. Trans Union, LLC, 74 F.4th 38, 42 (2d Cir. 2023). "[T]he threshold question" in an FCRA case "is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." Khan v. Equifax Info. Servs., LLC, No. 18-CV-6367, 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019) (quoting Neclerio v. Trans Union, LLC, 983 F. Supp. 2d 199, 209 (D. Conn. 2013)). "[T]he overwhelming weight of authority holds that a credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 91 (2d Cir. 2021) (quoting Khan, 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019)). "[A]llegedly

7

> inaccurate information reported on a consumer's credit report must be objectively and readily verifiable to be actionable[.]" <u>Sessa</u>, 74 F.4th at 42. A statement that is technically factually correct may be materially misleading where a Plaintiff can establish "that the information provided is open to an interpretation that is directly contradictory to the true information." <u>Krausz v. Equifax Info. Servs., LLC</u>, 2023 WL 1993886, at *11 (S.D.N.Y. Feb. 14, 2023) (quoting <u>Gross v. Private National Mortgage Acceptance Company, LLC</u>, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021)).

<u>Miller I</u>, 2026 WL 913153, at *6-7.

## II. <u>Application</u>

### a. <u>The Information at Issue Was Accurate and Not Misleading</u>

As the Court held in <u>Miller I</u>, the information at issue in the Complaint was both accurate and not misleading. 2026 WL 913153, at *3. First, the information was accurate because "[t]he parties do not dispute Plaintiff's failure to pay the Recorded Payments until November 2024-after they were due." <u>Id.</u> *8. Therefore, the reports were "literally accurate in identifying the Recorded Payments as late." <u>Id.</u> (citing <u>Shimon v. Equifax Info. Servs. LLC</u>, 994 F.3d 88, 91-92 (2d Cir. 2021)).

Second, the information was not misleading because Plaintiff's claim that a reasonable user would believe he lacked sufficient funds to pay on time is purely speculative. <u>See Miller I</u>, 2026 WL 913153, at *3. In <u>Miller I</u>, the Court explained

"multiple recent FCRA cases adjudicating autopay-related late payments have found such notations were not misleading."  Id. (citing Spira v. TransUnion, LLC, No. 23-CV-4319, 2024 WL 2221662, at *4 (S.D.N.Y May 16, 2024) (explaining fault is not relevant to determining whether payments were accurately reported as late); Silber v. TransUnion, LLC, No. 23-CV-07182, 2025 WL 5888620, at *4 (S.D.N.Y. Feb. 2025) (stating "reporting of missed payments does not carry any deceptive inference that plaintiff did anything other than fail to make timely payments"); Goldenberg v. TransUnion, LLC, No. 23-CV-9514, 2025 WL 2200486, at *1, *5 (E.D.N.Y. Aug. 1, 2025) (rejecting an FCRA claim made by a plaintiff who had an alleged autopay issue, even where she had sufficient funds in her account)).

Plaintiff attempts to distinguish the JPMC claims from Miller I by arguing "the Court's prior Order did not address Chase's conduct, Chase's investigation, or Chase's independent obligations as a furnisher under 15 U.S.C. § 1681s-2(b)," and Chase "possessed the underlying account records, payment history, reversal information, and dispute materials relating to Plaintiffs [sic] accounts."  (Opp'n, at 1.)  However, none of these circumstances change the fact Plaintiff undisputedly did not pay on time.

b. Plaintiff Fails to Distinguish the JPMC Action from *Miller I*

Plaintiff's Opposition primarily relies upon Zimmerman v. Bank of America, N.A., out-of-circuit authority which this Court does not find persuasive. No. 25-CV-10164, 2026 WL 1471875, at *1 (N.D. Cal. May 26, 2026). The Zimmerman court addressed circumstances where the plaintiff alleged: he enrolled in Bank of America's autopay program; had sufficient funds available in his checking account on the due date; and, had properly authorized the automatic withdrawal for the last installment payment on a car loan. Id. Despite this, Bank of America allegedly failed to process the payment and reported the account as delinquent to credit reporting agencies, which then maintained the negative reporting even after the plaintiff disputed the information. Id. at *1-2. The Zimmerman court denied Bank of America's motion to dismiss, largely on grounds "the failure of the payment to process was simply due to an error by Bank of America, and that it was therefore misleading to report the payment as delinquent." Id. at 3 (emphasis added). Even in reaching this decision, the Zimmerman court admitted its interpretation of the FCRA was inconsistent with "most district courts to consider this issue." Id. at 1.

Plaintiff's allegations are distinguishable from those in Zimmerman. Whereas Zimmerman addressed the failure of a processor to make autopayments on time, the payment error at issue

10

here stemmed from Plaintiff's own mistake.  Compare id. at 1, with Compl. ¶¶ 18, 19. And, even assuming Zimmerman's rationale can be mapped onto these facts, the Court need not apply the rationale of an admittedly-outlying, out-of-circuit case in the absence of similar conclusions from Second Circuit courts.  Zimmerman, 2026 WL 1471875, at *1.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Motion (ECF No. 45) is GRANTED to the extent all claims against JPMC are dismissed.  As there are no longer any active claims in the case, the Clerk of Court is DIRECTED to CLOSE this case.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: July 23, 2026
       Central Islip, New York